**\*NOT FOR PUBLICATON\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARRY BOLDT and PATRICIA BOLDT, husband and wife, <br><br> Plaintiffs, <br><br> v. <br><br> CAPTAIN BRETT TAYLOR; REEL REACTION SPORT FISHING, LLC and JOHN DOES A-Z, (multiple alternative fictitious individuals and/or business entities), j/s/a, <br><br> Defendants. | Civil Action No. 21-03204 <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

This negligence action arises out of a dispute between Plaintiffs Harry Boldt ("Mr. Boldt") and Patricia Boldt ("Mrs. Boldt") (collectively, "Plaintiffs"), and Defendants, Captain Brett Taylor ("Captain Taylor"), and Reel Recreation Sport Fishing, LLC ("Reel Recreation") (collectively, "Defendants"), in connection with a boating accident that occurred during a fishing expedition off the coast of New Jersey. Pending before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that a release and waiver agreement signed by Mr. Boldt prior to the fishing expedition disclaims Defendants from any liability alleged in Plaintiffs' Complaint. For the reasons stated below, Defendants' motion is **GRANTED**.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The relevant facts are derived from Plaintiffs' Statement of Undisputed Facts ("Pls. SOMF"), Defendants' Statement of Undisputed Material Facts ("Defs. SOMF"), and Plaintiffs' Response to Defendants' Statement of Undisputed Material Fact ("Pls. Resp.").

On June 19, 2020, Mr. Boldt embarked on a chartered fishing tour operated by Reel Recreation and led by Captain Taylor. (Defs. SOMF at ¶ 1–2; Pls. Resp. at ¶ 1–2.) After boarding the boat, but prior to beginning the tour, Mr. Boldt signed a waiver titled "Assumption of Risk and Complete Release of Liability" (the "Waiver"). (Defs. SOMF at ¶ 3; Pls. Resp. at ¶ 3.) Plaintiffs concede that Mr. Boldt signed the waiver, but they stress that the Waiver did not include an explanation or discussion about the document. (Pls. Resp. at ¶ 3.) Rather, according to Plaintiffs, Captain Taylor merely "discussed where life preservers were and told Mr. Boldt to keep his hands inside the vessel when departing the dock." (Pls. SOMF at ¶ 1.)

During the fishing expedition, Mr. Boldt was seriously injured when the vessel was struck by a wave, and he fell from his seated position. (Defs. SOMF at ¶ 5.) Mr. Boldt's injuries, which included numerous rib fractures and a left-sided pneumothorax, required extensive medical treatment, and resulted in significant persistent and chronic medical issues. (Pls. SOMF at ¶ 3.)

On December 23, 2020, Plaintiffs filed a Complaint in the Superior Court of the State of New Jersey, Ocean County, alleging that Mr. Boldt was severely injured due to Captain Taylor's negligence in operating the fishing vessel. (ECF No. 1.) Specifically, Plaintiffs assert the following claims in connection with the alleged incident: negligence as to Captain Taylor (Count One), loss of consortium (Count Two), and vicarious liability as to Reel Recreation based on the purportedly negligent actions of Captain Taylor (Count Three).

On February 26, 2021, Defendants filed an Answer to the Complaint, raising the affirmative defense based on the contractual exculpatory waiver. (ECF No. 3 at 4.)

On March 25, 2022, Defendants filed the instant motion for summary judgment, arguing (1) the Complaint is governed by federal admiralty law, and (2) the complete release signed by Mr. Boldt is valid under federal admiralty and state law. (ECF No. 28 ("Defs. Mov. Br.") at 3–4.) In that connection, Defendants argue that the release and waiver agreement disclaims them from liability for the events and injuries alleged in Plaintiffs' Complaint. (*Id.* at 7.) In response, Plaintiffs filed opposition on April 4, 2022, and Defendants filed a reply brief on April 19, 2022.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the moving party, that party "must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating

3

"that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Rado Corp.*, 475 U.S. 574, 586 (1986).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DISCUSSION

Defendants move for summary judgment based on the Waiver signed by Plaintiff, which they claim is valid and enforceable under federal admiralty and New Jersey law. (Defs. Mov. Br., 4.) In response, Plaintiffs contend that the Waiver is not valid under federal admiralty law as supplemented by state law. Plaintiffs also assert that waivers, generally, are inapplicable to claims of gross negligence.

4

      **A.**      **Application of Federal Admiralty Law**

First, the Court addresses the applicability of federal admiralty law to the instant dispute. Federal courts have original jurisdiction in "[a]ny case of admiralty or maritime jurisdiction." 28 U.S.C. § 1331(1). "Admiralty jurisdiction is evoked if the alleged tort occurs on a vessel in navigable waters, and the actions giving rise to the alleged tort have the potential to disrupt maritime commerce and 'bear a significant relationship to traditional maritime activity.'" *Olmo v. Atl. City Parasail, LLC*, No. 13-4923, 2016 WL 1728964, at *7 (D.N.J. Apr. 28, 2016) (quoting *Sisson v. Ruby*, 497 U.S. 358, 364-66 (1990)). Here, the incident in question occurred in the navigable waters of Barnegat Bay, off the coast of New Jersey, and the activity of fishing bears a significant relationship to admiralty activity. *See Banchi v. Miller*, 388 F. Supp. 645, 646 (E.D. Pa. 1974) (a recreation fishing trip, "not in furtherance of maritime commerce" may still be the source of an incident bearing a significant relationship to traditional maritime activity); *see also Olmo*, No. 13-4923, 2016 WL 1728964, at *7 (applying federal admiralty law where the plaintiff's injury occurred on a boat, traveling through navigable waters off the coast of New Jersey).

In addition, the Court must also decide whether to apply substantive admiralty law or New Jersey law to this matter. Generally, "[w]ith admiralty jurisdiction ... comes the application of substantive admiralty law." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996) (internal quotation marks and citation omitted). However, the application of admiralty law is not an " 'automatic displacement of state law.' " *Centennial Ins. Co. v. Lithotech Sales, LLC*, 29 Fed.Appx. 835, 836 (3d Cir. 2002) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 (1995)). A federal court sitting in admiralty jurisdiction may rely on state law as long as the law in question "does not conflict with [federal] maritime law." *Id.*

5

Relevant here, admiralty law and New Jersey law recognize that exculpatory contracts are valid and enforceable. *See Charnis v. Watersport Pro, LLC*, No. 07–0623, 2009 WL 2581699, at *4 (D. Nev. May 1, 2009) (holding that, under admiralty law, "owners of recreational vessels may, through written waivers, disclaim liability for their own negligence"); *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 694 (N.J. 2010) (applying New Jersey law, the Court upheld an exculpatory provision that eliminated liability for a fitness center's own negligence if the consumer was injured while using the fitness center). Indeed, under admiralty law, an enforceable exculpatory clause must be "(1) clear and unambiguous; (2)[ ] not inconsistent with public policy; and (3)[ ] not an adhesion contract." *Cobb v. Aramark Sports & Entm't Servs., LLC*, 933 F. Supp. 2d 1295, 1299 (D. Nev. 2013) (citing *Charnis*, 2009 WL 2581699, at *4). Similarly, under New Jersey law, courts also require that an exculpatory clause be clear and unambiguous. *See Stelluti*, 1 A.3d 678, 689-90 (explaining that to enforce an exculpatory clause it must "reflect the unequivocal expression of the party giving up his or her legal rights that this decision was made voluntarily, intelligently and with the full knowledge of its legal consequences" (internal quotation marks and citation omitted)).

Furthermore, an exculpatory clause is enforceable if it is not "plainly inconsistent with public policy." *Id.* at 689. In addition, both admiralty law and New Jersey law provide that exculpatory clauses which disclaim liability for conduct beyond negligence or carelessness are inconsistent with public policy. *See Charnis*, 2009 WL 2581699, at *5 (noting that "[u]nder federal maritime law [ ], owners of recreational boats may disclaim liability for negligence, but they may not do so for gross negligence" and that "[g]ross negligence goes beyond ordinary negligence and is the willful, wanton, or reckless infliction of harm" (internal quotation marks and citation omitted)); *see also Stelluti*, 1 A.3d at 694–95 (applying New Jersey law and stating that defendant "could not exculpate itself from [ ] reckless or gross negligence," but could exculpate itself from

6

"injuries sustained as a matter of negligence"). Finally, New Jersey also recognizes, in connection with certain public policy considerations, that an exculpatory contract can be invalidated if the contract grows "out of unequal bargaining power or is otherwise unconscionable," such as a contract of adhesion. *Stelluti*, 1 A.3d at 687–89 (holding that "although the terms of the agreement were presented 'as is' to [plaintiff], rendering this a fairly typical adhesion contract in its procedural aspects, we hold that the agreement was not void based on any notion of procedural unconscionability"). Accordingly, federal admiralty law and New Jersey law are in sync for the purposes of exculpatory clauses.

      B.      **The Waiver Is Valid and Enforceable**

As discussed above, an exculpatory clause under admiralty law is valid if it is (1) clear and unambiguous considering all the circumstances, (2) not inconsistent with public policy, and (3) not a contract of adhesion. *Charnis*, No. 07–0623, 2009 WL 2581699, at *13. Considering these three factors in connection with the evidence in the record in a light most favorable to Plaintiffs, I find that the exculpatory clause in the instant case is valid and enforceable.

          i.      <u>The Waiver Is Clear and Unambiguous</u>

At the outset, although Plaintiffs do not challenge the clarity of the Waiver, I nonetheless find the Waiver clear and unambiguous. "A waiver is clear and unambiguous if it specifically bars the plaintiff's negligence claim and explicitly exonerates all defendants in the lawsuit." *Olmo*, No. 13-4923, 2016 WL 1728964, at *9 (quoting *Cobb,* 933 F. Supp. 2d at 1299). In contrast, a waiver is ambiguous if "it is reasonably susceptible to more than one interpretation." *Id.* (quoting *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1357 (S.D. Fla. 2007)). However, a release does not need to "list ... each possible manner in which releaser could be injured during an inherently dangerous event." *Olivelli v. Sappo Corp.*, 225 F.Supp.2d 109, 118 (D.P.R. 2002).

The Waiver is titled "Reel Reaction Sportfishing LLC Charter Fishing – Assumption of Risk and Complete Release of Liability," and reads in relevant part:

> I understand that the purpose of signing this document is to GIVE UP ALL of my rights to sue Reel Reaction Sportfishing LLC, and any of their EMPLOYEES, AND ALL OF ITS BOATS (WHETHER OWNED, OPERATED, CONTROLLED, BORROWED, LEASED, CHARTERED OR OTHERWISE) HEREINAFTER REFERRED TO AS THE RELEASED PARTIES AND TO HOLD THESE ENTITIES HARMLESS FROM ANY AND ALL LIABILITIES ARISING AS A CONSEQUENCE OF ANY ACTS OR OMISSIONS ON THEIR PART, INCLUDING BUT NOT LIMITED TO NEGLIGENCE OF ANY TYPE.
>
> […] I UNDERSTAND THAT THERE ARE INHERENT RISKS INVOLVED WITH BOATING, RISHING, AND WATER ACTIVITIES, including but not limited to equipment failure, perils of the sea, harm by marine creatures (including marine animal bites), acts of fellow participants, entering or exiting the water, injury from hooks or other sharp objects, loss of balance, slipping/falling, and/or motion sickness, and injuries caused by unpredictable weather and/or sea conditions, boarding or disembarking the vessel, injuries caused by fishing equipment, activities on the docks, and I HEREBY ASSUME EACH AND EVERY SUCH RISK WHETHER SPECIFICALLY LISTED HEREIN OR NOT WHETHER FORESEEABLE OR NOT. IT IS MY INTENTION THAT THIS RELEASE BE CONSTRUED AS BROADLY AS POSSIBLE AND IN FAVOR OF THE RELEASED PARTIES.
>
> […] IT IS MY INTENTION BY THIS INSTRUMENT TO GIVE UP MY RIGHT TO SUE ALL PERSONS OR ENTITIES REFERRED TO HEREIN, WHETHER SPECIFICALLY NAMED OR NOT, AND IT IS ALSO MY INTENTION TO EXEMPT AND RELEASE Reel Reaction Sportfishing llc, OPERATOR, OTHER ASSOCIATED PERSONNEL, and its boats (whether OWNED, OPERATED, LEASED, OR CHARTERED), AND TO HOLD THESE ENTITIES HARMLESS FROM ANY AND ALL LIABILITY FROM PERSONAL INJURY, PROPERTY DAMAGE, OR WRONGFUL DEATH CAUSED BY NEGLIGENCE OR GROSS NEGLIGENCE AND I ASSUME ALL RISK IN CONNECTION WITH FISHING, RIDING, AND ALL OTHER BOATING/FISHING ACTIVITIES, INCLUDING BUT LIMITED TO THE MAINTENANCE OF THE EQUIPMENT OR ORGANIZATION OF THIS ACTIVITY.

(Declaration of Donald J. Grasso, Esq. in Support of Plaintiffs' opposition to Defendant's Motion for Summary Judgment ("Grasso Decl."), Ex. A, Complete Release.)

Here, the language is perspicuous, negligence was specifically mentioned, and Mr. Boldt's name is printed and signed on the Waiver. While Plaintiffs do not challenge the clarity of the

8

Waiver language, they contend that there was "no discussion whatsoever about the release itself." (Pls. Opp., 11.) In that regard, Mr. Boldt claims that he does not remember the document, and, at the time of execution, he did not understand that he waived liability. *Id.* Nonetheless, when deposed, Mr. Boldt testified that the signature appearing on the Waiver is, in fact, his. (Declaration of Michael E. Stern, Esq. in Support of Defendants' Motion to Dismiss ("Stern Decl."), Ex. B at T46–47.) Plaintiffs also highlight the inclusion of a black box at the bottom of the page which contains a rod/reel overboard agreement. (Grasso Decl., Ex. A.) Plaintiffs emphasize that although this black boxed section cautions the reader "IMPORTANT – READ CAREFULLY[,]" that separately outlined portion of the Waiver makes no reference to the waivers of fault or negligence mentioned elsewhere in the document. (*Id.*) Plaintiffs imply that this specific section of text distracts and detracts from the other, more relevant sections of the Waiver. This argument, however, is belied by the fact that the Waiver, which was only four paragraphs and one page, was not a lengthy document. As shown above, the Waiver also deliberately utilized capital lettering, bold font, and other techniques to signal important phrases and statements to the document's signatories.

Thus, I find the Waiver sufficiently put Mr. Boldt on notice of its legal significance and effect. *See Olmo*, No. 13-4923, 2016 WL 1728964, at *9 (finding that because the language in the liability waiver signed by the plaintiff was clear and unambiguous, it "unequivocally should have put her on notice of its legal significance and effect"); *compare Morgan Home Fashions, Inc. v. UTI, United States, Inc.*, No. 03-0772, 2004 U.S. Dist. LEXIS 13412, at *12 (D.N.J. Feb. 9, 2004) (a waiver was valid where the terms were spelled out in plain and clear language, even though the information was on the back of the invoice, in small font, and light print), *and Kozur v. F/V Atl. Bounty, LLC*, No. 18-08750, 2020 U.S. Dist. LEXIS 148633, at *13–14 (D.N.J. Aug. 18, 2020) (a

waiver was clear and unambiguous where it clearly stated and explained its terms and critical language was capitalized and bolded), *with Carter v. Exxon Co. USA*, 177 F.3d 197, 208 (3d Cir. 1999) (a disclaimer was invalid where, among other things, there was no title and critical language was not capitalized or highlighted).

Moreover, Defendants correctly emphasize that simply because Mr. Boldt claims that he did not read or understand the Waiver, or that Captain Taylor did not directly discuss the contents of the release with him, does not render the Waiver unenforceable. Rather, when entering a written contract, the party is presumed to understand and assent to its terms unless there is a showing of fraud or duress. *See Rudbart v. North Jersey Dist. Water Supply Com'n*, 127 N.J. 344, 353 (1992) ("A party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect") (citations omitted). Put simply,

> It is the general rule that where a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he read, understood and assented to its terms and he will not be heard to complain that he did not comprehend the effect of his act in the signing.

*Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 311 (D.N.J. 1997) (citations omitted). Here, Plaintiffs do not claim that any fraud or duress induced Mr. Boldt to sign the Waiver, and as such, while Mr. Boldt may purport to have not discussed or understood the Waiver, his freely given signature binds him to the terms of the agreement. *See Perrigo Co. v. AbbVie Inc.*, No. 20-17560, 2021 U.S. Dist. LEXIS 192061, at *30–31 (D.N.J. Sep. 30, 2021) (where Plaintiff claims no exception of fraud, misrepresentation, or incapacity, the signed release in question is valid).

Finally, Plaintiffs attempt to distinguish the instant case from the cases relied on by Defendants, including *Bryzona v. Niagara Gorge Jetboating, Ltd.,* 2011 U.S. Dist. LEXIS 111546, at *11–12 (W.D.N.Y. Sep. 28, 2011), *Witkowski v. Niagara Jet Adventures, LLC*, 2020 U.S. Dist.

LEXIS 16551, at *7 (W.D.N.Y. Jan. 27, 2020), and *Waggoner v. Nags Head Water Sports*, *Inc.*, 1998 U.S. App. LEXIS 6792, at *10–11, 13–15 (4th Cir. Apr. 6, 1998). Specifically, Plaintiffs argue that unlike the cases cited by Defendants, which all involved "inherently dangerous activities," fishing is not an inherently dangerous activity. However, I find Plaintiffs' argument unpersuasive. (Pls. Opp., 12-13.) In *Bryzona*, which related to jet-boating, the court did not limit its holding specifically to inherently dangerous activities. Rather, the court identified the "discernible standard that a pre-accident waiver will absolve an owner or operator of liability for recreational accidents taking place on navigable waters where the exculpatory clause '(1) is clear and unambiguous; (2) is not inconsistent with public policy; and (3) is not an adhesion contract.'" *Bryzona,* 2011 U.S. Dist. LEXIS 111546, at *11–12 (quoting *Charnis*, 2009 U.S. Dist. LEXIS 76022, at *5). The court in *Witkowski* also applied the same three-pronged test from *Charnis*. *Witkowski*, 2020 U.S. Dist. LEXIS 16551, at *7. Similarly, in *Waggoner*, the Fourth Circuit did not rely on the nature of the activity in question, jet-skiing, in upholding the waiver the plaintiff had signed. In fact, while the wording of the *Waggoner* waiver is significantly similar to the Waiver, here, the *Waggoner* waiver did not explicitly include the word "negligence," which the Waiver in question includes. *Waggoner*, 1998 U.S. App. LEXIS 6792, at *10–11, 13–15. Thus, I find the terms of the Waiver clear and unambiguous.

      ii.    The Waiver Is Not Inconsistent with Public Policy

Next, I find that the Waiver is not inconsistent with public policy. "Under admiralty law, exculpatory clauses waiving liability for negligence are consistent with public policy." *Olmo*, No. 13-4923, 2016 WL 1728964, at *10 (referencing *Cobb*, 933 F. Supp. 2d at 1299 ("waivers of liability on navigable waters do not contravene federal public policy")). That said, Plaintiffs correctly explain, however, that the Waiver would be invalid in the case of gross negligence. *See*

11

*Charnis,* 2009 U.S. Dist. LEXIS 76022, at *5 ("[u]nder federal maritime law [], owners of recreational boats may disclaim liability for negligence, but they may not do so for gross negligence"). Gross negligence requires "an extreme departure from the ordinary standard of care." *Marangos v. Flarion Techs., Inc.*, 2007 U.S. Dist. LEXIS 31865, at *12 (D.N.J. May 1, 2007) (quoting *Swisscraft Novelty Co. v. Alad Realty Corp.*, 113 N.J. Super. 416, 426 (App. Div. 1971)).

Plaintiffs concede that they failed to plead gross negligence in their Complaint, but they highlight that they asserted such a claim in Mr. Boldt's claim in the Exoneration From or Limitation of Liability Action ("LOLA") proceeding. (Pls. Opp., 20.) In this regard, however, Plaintiffs provide no legal support for their argument that inclusion of this claim in the LOLA proceeding somehow cures their deficiencies in this action. Indeed, in this suit, the Court must look to the Complaint to determine the causes of action that Plaintiff intended to assert.

Moreover, even if Plaintiffs had asserted a claim for gross negligence, no evidence exists in the record to suggest that Defendants acted with an "extreme departure from the ordinary standard of care." Rather, the parties agree that the incident was unexpected, with Mr. Boldt acknowledging that he "didn't see anything," in reference to the boating accident. (Stern Decl., Ex. B at T39:1.) Specifically, Mr. Boldt conceded that he did not know what caused the accident, testifying that he did not see any wave or any boats crossing nearby at a high speed that could have left a wake. (Stern Decl., Ex. B at T37:13–15, T38:23–39:1.) Mr. Boldt also recalled that the water conditions were relatively calm with the exception of the sudden and unexpected accident, stating "[w]e were on our way home and the next thing we know we were all thrown up in the air and crashing on the deck." (*Id.* at T42:11–13, 17.) Critically, as it relates to Captain Taylor's conduct, Mr. Boldt admitted that Captain Taylor "appeared to be operating in a safe manner." (*Id.* at T19–

21.) Indeed, Mr. Boldt's testimony is consistent with Captain Taylor's own recollection of the incident. For example, Captain Taylor testified that the wave or wake which caused the accident was unexpected, stating that "[t]he wave literally formed – unexpectedly formed eight feet from my boat." (Grasso Decl., Ex. B at T54:12–14.) Captain Taylor further testified that the weather was calm, agreeing with Mr. Boldt's statement that the bay was "almost like a lake." (*Id.* at T37:14–15, 21–24, T38:1–2.) Captain Taylor noted that while he did see two boats about fifty yards in front of his boat which made minimal wakes, those were not the wakes that the boat hit. (*Id.* at T57:11–15.) Rather, Captain Taylor believes that "the wake of those boats joined up with this wave that somehow came up and caused a wave about… eight feet in front of his own boat." (*Id.* at T58:5–11.) It is this wave—that neither Captain Taylor nor Mr. Boldt noticed or anticipated—that resulted in the accident. (*Id.* at T60:12–18.) Thus, because no evidence exists of gross negligence, and the only potential liability stemmed from allegations of negligence, I find that the Waiver is consistent with public policy.[1]

          iii.    The Waiver Does Not Constitute a Contract of Adhesion

Finally, the Waiver did not constitute a contract of adhesion as "liability waivers for voluntary recreational activities are not adhesive contracts." *Olmo*, No. 13-4923, 2016 WL 1728964, at *10; *see also Olivelli,* 225 F. Supp. 2d 109 at 119 (in a strictly voluntary recreational pursuit like scuba diving, a contract of adhesion does not exist). In the instant matter, fishing is a voluntary recreational pursuit. *See Charnis,* 2009 U.S. Dist. LEXIS 76022, at *5 (wakeboarding is a voluntary recreational activity); *see also Cobb*, 933 F. Supp. 2d at 1299 (parasailing is a voluntary recreational activity). Because Mr. Boldt was engaged in a voluntary recreational activity which he freely chose to participate in, the Waiver did not constitute a contract of adhesion.

---

[1] I also note that Plaintiffs provide no case law to suggest that simply because the Waiver purports to disclaim liability for grossly negligent conduct, inclusion of such language does not render the entire Waiver null and void.

Accordingly, because I find the Waiver clear and unambiguous given the circumstances, consistent with public policy, and not a contract of adhesion, the Court finds the exculpatory waiver to be valid and enforceable. As such, Mr. Boldt waived any claims of liability arising out of negligence against Defendants, and Defendants' motion for summary judgment is granted.[2]

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED**.

Date:   July 18, 2022

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

---

[2] Finally, because the loss of consortium and respondeat superior claims are derivative of the negligence claim, those claims are dismissed as well. *See Reiff v. Convergent Tech.*, 957 F.Supp. 573, 584 (D.N.J. 1997) (dismissing plaintiff husband's loss of consortium claim after granting defendants summary judgment on plaintiff wife's claims and stating that "[l]oss of consortium is a derivative claim which depends for its sustenance upon a viable tort claim of the spouse."); *Acevedo v. Monsignor Donovan High Sch.*, 420 F.Supp.2d 337, 347-48 (D.N.J. 2006) (explaining that a loss of consortium claim is a derivative claim and dismissing such claim after dismissal of the plaintiffs' underlying claim); *see also Celestin v. West Deptford Township*, 2016 WL 5539584, at *13 (D.N.J. 2016) (dismissing plaintiff's claim against defendant under a theory of respondeat superior because it was derivative of the alleged negligence claim that was dismissed).